396 S.E.2d 174

**Bobby J. SHELL**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Frank T. Senkoski, and John W. Thomas.**

No. 19427.

Supreme Court of Appeals of West Virginia.

July 12, 1990.

**408**

Richard A. Robb, Charleston, for Bobby J. Shell.

Ricklin Brown, Bowles, Rice, McDavid, Graff & Love, Charleston, for Metropolitan Life Ins. Co.

NEELY, Chief Justice:

Bobby J. Shell appeals from an order of the Circuit Court of Logan County that granted summary judgment to his former employer, Metropolitan Life Insurance Company (Metropolitan), and his immediate supervisors, Frank T. Senkoski and John W. Thomas, denying his wrongful discharge and age discrimination claims and his motions to amend his complaint. On appeal, Mr. Shell argues that a previous decision by this Court on a certified question submitted by the parties did not resolve all the issues in the underlying action, that factual issues exist that preclude summary judgment on his age discrimination claim and that his amendments to his complaint relate back to his original complaint and are not barred by the statute of limitation. Although we agree that our previous decision on a certified question did not re-

solve all the issues in the underlying action, we affirm the judgment of the circuit court because it correctly decided the remaining issues on their merits.

This case concerns Metropolitan's discharge of Mr. Shell, its sales representative in Logan County from 1968 to 1987. Although during his career Mr. Shell received several awards for sales, in recent years his sales declined and in 1985, Mr. Shell received a letter from Metropolitan placing him on probation because his sales were "very unsatisfactory." Three months later on 7 March 1986, Mr. Shell received another letter from Metropolitan indicating that although his sales had improved, continued improvement was necessary to avoid "further admonitory action." On 30 March 1987, Mr. Shell was again informed by letter that his sales were unsatisfactory because he had not met Metropolitan's goal of first-year commissions totalling $12,000 for the past four quarters.[1]

In a letter dated 31 March 1987, Mr. Shell, then 51 years old, indicated that he planned to take early retirement at age 55 and that he hoped to increase his sales despite the economic problems of Southern West Virginia. In a letter dated 12 May 1987, John W. Thomas, Branch Manager and Mr. Shell's immediate supervisor, informed Frank Senkoski, the Regional Sales Manager, that as of 4 May 1987 Mr. Shell's first-year commissions totalled $736 for the past four quarters and Mr. Thomas's offers of help were rejected. Mr. Thomas recommended Mr. Shell be terminated. In a letter dated 5 June 1987, Mr. Senkoski, "[f]or reasons which have been given ... by your Branch Manager," terminated Mr. Shell's employment effective 12 June 1987.

During the two years preceding his discharge, Mr. Shell knew that he was failing to meet Metropolitan's goal for sales but thought Metropolitan would consider the economic conditions of his sales territory. When asked why he was discharged, Mr. Shell said:

Well, the only assumption you could make would be that I didn't write enough insurance for them. That's the only assumption you could take from it, because other than that, I have an impeccable record with Metropolitan, administratively, in sales, and every other way.

On 24 September 1987, Mr. Shell filed a complaint against his former employer and his immediate supervisors charging them with wrongful discharge, violation of *W. Va. Code*, 33–12A–3 [1984] (prohibiting an insurance company from discharging its agents except for "good cause"), and age discrimination.[2] After discovery was completed and prior to trial, the parties agreed to certify a question regarding the constitutionality of *W. Va. Code*, 33–12A–3 [1984] to this Court, we determined that as applied in this case, the statute was unconstitutional. Syllabus Point 6, *Shell v. Metropolitan Life Insurance Co.*, 181 W.Va. 16, 380 S.E.2d 183 (1989).

On remand, Mr. Shell sought to amend his complaint by adding alleged public policy violations to his wrongful discharge count and by adding two new counts. The alleged public policy violations of Mr. Shell's wrongful discharge included the protection of retirement income, the policy expressed in *W. Va. Code*, 33–12A–1 *et seq.* [1984] and the prohibition against deceptive acts or practice in insurance marketing. The two new counts were alleged breaches of an implied contract of employment and an implied covenant of good faith and fair dealing.

Metropolitan moved for summary judgment and following a hearing, the circuit court granted Metropolitan summary judgment and denied Mr. Shell's motions to amend. Although the circuit court's order noted an alleged agreement by the parties that this Court's opinion in *Shell Id.*, would resolve all issues in the underlying case, the court considered the merits of all the issues, including the issues raised by Mr. Shell's motions to amend his complaint, and

---

1. Metropolitan increased the minimum first-year commission objective for 1986 from $10,000 to $12,000. The 1987 objective remained at the $12,000 level.

2. The complaint stated that the "[d]efendants' [sic] discharge of the plaintiff was in violation of the West Virginia Human Rights Act, 35–11–1 *et seq.* [sic] on the basis of age."

concluded that judgment should be awarded to Metropolitan.[3] Mr. Shell appealed to this Court.

## I.

 Although we agree with Mr. Shell that our decision in *Shell Id.* did not dispose of all the issues in the underlying case, we affirm the decision of the circuit court because it correctly resolved the remaining issues. Neither the record nor our decision in *Shell* indicates our decision completely resolved all the issues. The only evidence in the record concerning the alleged agreement consisted of affidavits from Mr. Shell and his former lawyer stating they made no such agreement. In *Shell,* we considered a certified question concerning one issue, namely, the constitutionality of *W.Va.Code,* 33–12A–1, *et seq.* [1984]. We noted that Mr. Shell had also alleged age discrimination but concluded "[t]hat cause of action is not involved in these proceedings and is not affected by our decision in this case." *Id.* 181 W.Va. at 19, 380 S.E.2d at 186 n. 6. After reversing the circuit court's ruling on the certified question, we remanded the case "for such further proceedings as may be necessary." *Id.* 181 W.Va. at 26, 380 S.E.2d at 193.

Our decision in *Shell,* holding that there was no violation of *W.Va.Code,* 33–12A–1 *et seq.* [1984], because, the statute unconstitutionally impaired the parties' preexisting contractual rights, eliminated certain issues. Mr. Shell, in his motions to amend his complaint, attempted to relitigate some of these issues. Specifically, Mr. Shell attempted to argue that his discharge violated a substantial public policy expressed in *W.Va.Code,* 33–12A–1 *et seq.* [1984], and that his discharge violated an implied contract of employment.

In *Shell,* we specifically rejected Mr. Shell's *W.Va.Code,* 33–12A–1, *et seq.* [1984], public policy argument by stating:

This legislation [*W.Va.Code,* 33–12A–1, *et seq.* [1984]] is designed to protect a narrow class of citizens, i.e., insurance agents, rather than a broad societal interest. It is not imbued with the substantial public policy that will justify state interference with the private contractual obligation of these parties.

*Id.* 181 W.Va. at 24, 380 S.E.2d at 191. We questioned if the statute "strikes an appropriate balance between the reasonable exercise of the State's police powers and legislation that simply benefits a special interest group." *Id.* We then examined how the statute requires the retention of an agent whose license had been revoked or one guilty of outrageous misconduct. We concluded that the statute "cannot be construed to be for the general good of the public . . . [or] to benefit the general public who may deal with such agents." *Id.* 181 W.Va. at 24–25, 380 S.E.2d at 192.

In *Shell,* we recognized Mr. Shell's status as an "at will" employee, thereby, rejecting the existence of an implied contract of employment.[4] When Mr. Shell was hired "[h]is employment contract provided that he could be dismissed by Metropolitan 'without advance notice for breach of any of the conditions of your appointment and also at any time by two weeks' notice in writing[.]'" *Id.* 181 W.Va. at 18, 380 S.E.2d at 185 (quoting Mr. Shell's employment contract). Mr. Shell's employment contract further provided that he would:

(i) observe and be bound by the rules of the Company as they may be changed by the Company from time to time, including but not limited to, those embodied in the Manual of Instructions for Agents and the Company's applicable commission and compensation schedules.

In *Shell,* we considered Mr. Shell's argument that a new agents' manual issued in March 1985 constituted a new employment contract. We rejected that argument finding:

---

3. Mr. Shell petitioned the circuit court to set aside the order dismissing his complaint and denying his motions to amend. The circuit court, by order dated 27 October 1989, found the arguments without merit and refused to set aside his previous order.

4. *See Cook v. Heck's, Inc.,* 176 W.Va. 368, 342 S.E.2d 453 (1986) (recognizing an employee handbook can constitute an offer for an unilateral contract); *Collins v. Elkay Mining Co.,* 179 W.Va. 549, 371 S.E.2d 46 (1988).

Nothing in the March, 1985 amendment to the agents' manual modified the provision of the 1968 contract concerning the "at will" nature of Mr. Shell's employment. In fact, the new agents' manual expressly acknowledged Metropolitan's right to terminate Mr. Shell's employment for any reason on proper notice. *Id.* 181 W.Va. at 20, 380 S.E.2d at 187. Metropolitan's imposition of production standards did not alter the "at will" nature of Mr. Shell's employment. Mr. Shell's original employment contract expressed Metropolitan's right to change work rules, set production goals and adjust compensation.

Because our decision in *Shell* expressly decided the issues of a violation of the public policy expressed in *W.Va.Code*, 33–12A–1 *et seq.* [1984], and of Mr. Shell's status as an "at will" employee, the circuit court properly denied Mr. Shell's motions to amend his complaint as to these two issues.[5]

## II.

The circuit court's dismissal of Mr. Shell's age discrimination issue was proper because Mr. Shell failed to establish a *prima facie* case. In Syllabus Point 3, *Conaway v. Eastern Associated Coal Corp.*, 178 W.Va. 164, 358 S.E.2d 423 (1986), we stated:

**5.** On appeal, Mr. Shell argues that his amendments to the complaint relate back to the complaint and do not establish a new cause of action. Rule 15(c), W.Va.R.Civ.P. [1978], states in pertinent part:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

We explained further in Syllabus, *Roberts v. Wagner Chevrolet–Olds, Inc.*, 163 W.Va. 559, 258 S.E.2d 901 (1979):

An amendment to a complaint which changes only the legal theory of the action, or adds another claim arising out of the same conduct, transaction or occurrence, will relate back to the filing of the original complaint, provided (1) injustice to the adverse party will not result from allowance of relation back, and (2) the adverse party has received adequate notice of the claim against him and has

In order to make a prima facie case of employment discrimination under the West Virginia Human Rights Act, W.Va. Code § 5–11–1 *et seq.* (1979), the plaintiff must offer proof of the following: (1) That the plaintiff is a member of a protected class. (2) That the employer made an adverse decision concerning the plaintiff. (3) But for the plaintiff's protected status, the adverse decision would not have been made.

*See* Syllabus Point 1, *Kanawha Valley Regional Transportation Authority v. W.Va. Human Rights Comm'n.*, 181 W.Va. 675, 383 S.E.2d 857 (1989). The first two parts of *Conaway*'s test are undisputed because Mr. Shell was 52 years old when he was discharged. The third part of the *Conaway* test requires the plaintiff in a discrimination case "to show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion." *Id.* 178 W.Va. at 170, 358 S.E.2d at 429–30. *See Perilli v. Bd. of Educ. Monongalia County*, 182 W.Va. 261, 387 S.E.2d 315 (1989) (discussing the showing of facts necessary to support a *prima facie* discrimination claim). After the employee met his burden, then

an adequate opportunity to prepare a defense to it.

*But see Mauck v. City of Martinsburg*, 178 W.Va. 93, 357 S.E.2d 775, 778 (1987) noting that after an adverse ruling by an appellate court, leave to amend should not be granted absent compelling circumstances because:

[P]arties should ordinarily litigate all issues at one time rather than piecemeal.... It would be unfair to defendants, after the latter have prevailed on the ... theories originally presented, to allow plaintiff to test yet another theory and to continue on what would become a new law suit. (Citations omitted).

In the present case, Mr. Shell's amendments merely add other claims or theories arising out of his discharge and our decision in *Shell* did not address all the issues. The record shows that Metropolitan was able to adequately address these additions and suffered no injustice. However, Mr. Shell's new claims or theories were rejected by the circuit court on their merits, in addition to its consideration of the statute of limitations issue.

the "burden would shift to the employer to show some nondiscriminatory reason for the decision." *Conaway, supra,* 178 W.Va. at 170, 358 S.E.2d at 430.

In the present case, Mr. Shell failed to produce any evidence that Metropolitan discharged him because of his age. When asked why he alleged age discrimination, Mr. Shell answered:

> Well, mostly, you know, is that there's younger guys still working there; there's still older guys than I still working there. And some of these other guys, younger and older, have violated company policy, or maybe received the same letters. As you know, agents, you know, talk a lot among themselves, just like management does, you know, and you hear of people getting letters for different reasons, and so on like that, and I just felt I was more or less entrapped, or something of that sort. And after going to my attorney, I know they broke the law period, you know.

Mr. Shell said he failed to meet Metropolitan's production goals and indicated that other sales representatives with low sales also received warning letters. Of the four sales representatives who received the 30 March 1987 warning letter, two were in their twenties and two were in the protected class. The other member of the protected class improved his sales and was retained. Other sales representatives identi-

fied by Mr. Shell as having been discharged were all younger than forty years and outside the protected class.

Mr. Shell failed to show any nexus between Metropolitan's decision and a discriminatory reason.[6] No admissions were made, no unequal treatment was alleged and no statistics were presented. Even Mr. Shell said the reason he was discharged was that he failed to sell enough insurance. Mr. Shell is unable to identify any disputed factual issues. Because Mr. Shell failed to show some nexus to link his discharge to his age, we hold that the circuit court was correct in dismissing his age discrimination claim.

### III.

Finally we note that the circuit court correctly dismissed the remaining issues that Mr. Shell attempted to raise by an amended complaint. Mr. Shell alleged that his discharge violated the substantial public policies of an interest in retirement income and a prohibition against deceptive acts or practices in insurance marketing.[7] In Syllabus, *Harless v. First Nat. Bank in Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 (1978), we stated:

> The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for

---

**6.** One of Mr. Shell's alleged violations of public policy, namely an interest in retirement income, arguably might indicate a discriminatory reason for his discharge. However, Mr. Shell, other than indicating that his retirement income would be affected by leaving Metropolitan, does not show a nexus between his retirement income and his discharge. According to Mr. Shell, Metropolitan's Supplemental Rules for District/Branch Management provide that branch managers receive a commission on "orphaned P & L business" (property and liability policies sold by a terminated employee). However, Mr. Shell was unable to relate this fact to his discharge or to the protected class. Mr. Shell did indicate that renewals require substantial services and, therefore, he was hampered in selling new policies. Even if we concluded that the retirement income issue established a *prima facie* case, we find that Metropolitan rebutted the *prima facie* case. In Syllabus Point 2, *Kanawha Valley Regional Transportation Authority, supra,* we stated:

> "The complainant's prima facie case of disparate-treatment employment discrimination can be rebutted by the employer's presentation of evidence showing a legitimate and nondiscriminatory reason for the employment-related decision in question which is sufficient to overcome the inference of discriminatory intent." Syllabus Point 2, *West Virginia Institute of Technology v. West Virginia Human Rights Comm'n,* 181 W.Va. 525, 383 S.E.2d 490 (1989).

Metropolitan introduced various letters warning Mr. Shell about his lack of sales. Metropolitan also produced undisputed records showing Mr. Shell's failure to meet Metropolitan's production goals. Based on the record, we find the employer's legitimate nondiscriminatory reason was not rebutted.

**7.** One of the substantial public policies that Mr. Shell requested we recognize was considered and rejected in *Shell supra.* See *supra* 183 W.Va. p. 410, 396 S.E.2d p. 177.

the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

We have exercised the power to declare an employer's conduct as contrary to public policy with restraint (Syllabus Point 3, *Yoho v. Triangle PWC, Inc.*, 175 W.Va. 556, 336 S.E.2d 204, 209 (1985)), and have deferred to the West Virginia legislature because it "has the primary responsibility for translating public policy into law." *Collins v. AAA Homebuilders, Inc.*, 175 W.Va. 427, 333 S.E.2d 792, 793 (1985).

Our retaliatory discharge cases are generally based on a public policy articulated by the legislature: *Harless, supra* (right of action for retaliatory discharge based on the West Virginia Consumer Credit and Protection Act, *W.Va.Code*, 46A–1–101, *et seq.*); *Collins v. Elkay Mining Co.*, 179 W.Va. 549, 371 S.E.2d 46 (1988) (right of action for retaliatory discharge based on a refusal to violate the West Virginia Mine Safety Act, *W.Va.Code*, 22A–1A–20); *McClung v. Marion County Comm'n.*, 178 W.Va. 444, 360 S.E.2d 221 (1987) (right of action for retaliatory discharge based on a right to file for overtime wages pursuant to *W.Va.Code*, 21–5C–8); *Cordle v. General Hugh Mercer Corp.*, 174 W.Va. 321, 325 S.E.2d 111 (1984) (right of action for retaliatory discharge based, in part, on *W.Va. Code*, 21–5–5b, which restricts an employer's use of polygraph testing); *Shanholtz v. Monongahela Power Co.*, 165 W.Va. 305, 270 S.E.2d 178 (1980) (right of action for retaliatory discharge based on a right to file a claim under the West Virginia Workers' Compensation Act, *W.Va.Code*, 23–5–1). However, in Syllabus Point 4, *Yoho, supra*, we refused to hold a provision in a collective bargaining agreement that mandated the termination of Ms. Yoho's seniority to be contrary to public policy. *Id.* 175 W.Va. at 562, 336 S.E.2d at 210. *See also Washington v. Union Carbide Corp.*, 870 F.2d 957, 964 (4th Cir.1989) (holding that West Virginia has not generally recognized a statutory public policy against retaliatory discharge for reporting safety violations).

■ In the present case, Mr. Shell, without reference to any statute, alleges that an interest in retirement income is a substantial public policy.[8] In *Conaway, supra*, we noted that a claim based on the fact that pension rights would not vest "is preempted by Federal ERISA law." *Id.* 178 W.Va. at 168, 358 S.E.2d at 427. Mr. Shell's claim is similarly preempted by ERISA. *See Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (improper processing of an employee benefit claim falls within ERISA's (29 U.S.C. § 1001 *et seq.*) preemption clause, § 514(a)); *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (common law clauses of action involving employee benefit plans are preempted by ERISA).

■ Mr. Shell, alleges that his discharge contravened the substantial public policy found in *W.Va.Code*, 33–11–4 [1985] (defining unfair trade practices in the insurance industry). The record does not indicate that Mr. Shell objected to any alleged deceptive practice or act of Metropolitan and Mr. Shell does not say he was discharged because of his opposition. The record does indicate that "piggybacking," defined by Mr. Thomas as "using in-force, the cash values or dividends of in-force policies to finance new policies," was discussed at a sales meeting. Mr. Thomas said that the example discussed required the payment of additional premiums and was not "piggybacking." Mr. Thomas said he did not permit the use of "piggybacking" as a marketing strategy. We note that "piggybacking" is not among those listed in the statute as an illegal or deceptive practice. The most pertinent section to "piggybacking" is *W.Va.Code*, 33–11–4(8)(b) [1985], which provides in part:

Nothing in subdivision seven or paragraph (a) of subdivision eight of this section shall be construed as including within the definition of unfair discrimination or rebates any of the following practices:

(i) In the case of any contract of life insurance or life annuity, paying bonuses

---

8. *See supra* note 5 for a discussion of Mr. Shell's lack of evidence showing that Metropolitan's policy on "orphaned P & L" policies was related to his discharge.

**414**

to policyholders or otherwise abating their premiums in whole or in part out of surplus accumulated from nonparticipating insurance: Provided, That any such bonuses or abatement of premiums shall be fair and equitable to policyholders and for the best interests of the insurer and its policyholders.

■ In Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963), we stated:

A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

In the present case, the record contains no evidence that Metropolitan engaged in "piggybacking," or that Mr. Shell objected to and was discharged because of his objections. Because the record fails to disclose a genuine issue of fact to be tried and no inquiry is desirable to clarify the application of law, we hold the circuit court's dismissal of Mr. Shell's motion to amend his complaint by adding public policy violations was proper.

■ Finally we note that Mr. Shell also sought to amend his complaint by alleging that his discharge breached an implied covenant of good faith and fair dealing. Before *Harless, supra,* West Virginia followed the general rule that "at will" employment was terminable by either party, with or without cause. *Harless, supra* 162 W.Va. at 119, 246 S.E.2d at 273. *Harless* recognized an exception to the general rule when the employer's motivation for the discharge contravenes a substantial public policy. *Id.* Although in *Harless* we noted that Massachusetts recognized "an implied covenant of good faith and fair dealing" (*Id.* 162 W.Va. at 122, 246 S.E.2d at 274), we adopted only the substantial public policy exception for at will employees. In *Stanley v. Sewell Coal Co.,* 169 W.Va. 72, 76, 285 S.E.2d 679, 682 (1981), we again considered Massachusetts's implied

covenant of good faith and fair dealing but then noted that *Harless's* rationale there was a substantial public policy against fraud and applied a two year statute of limitation. Under *Harless* and its progeny, a substantial public policy violation is the only exception to the general rule that "at will" private employment is terminable by either party, with or without cause. The record in the present case does not demonstrate a lack of good faith and fair dealing. Mr. Shell was discharged but only after repeated warnings about his lack of sales.[9]

We find that the circuit court's award of summary judgment to Metropolitan was proper because: (1) Certain issues related to Mr. Shell's employment as an insurance sales representative had been decided in *Shell, supra.* (2) Mr. Shell failed to establish a *prima facie* case for age discrimination. (3) The remaining allegations failed to demonstrate a violation of substantial public policy as required in *Harless, supra.*

For the above stated reasons, the judgment of the Circuit Court of Logan County is affirmed.

Affirmed.

9. Unlike the entitlement to sales commissions without additional work found in *Fortune v. National Cash Register Co.,* 373 Mass. 96, 364 N.E.2d 1251 (1977) (recognizing an implied covenant of good faith and fair dealing), Mr. Shell continued to provide extensive and personal service for his insurance renewals. Thus Mr. Shell's compensation for renewals was in part based on his on-going service.