966 F.2d 1443
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
LOUDIN INSURANCE AGENCY, INCORPORATED; Barboursville
Insurance, Incorporated; Richard D. Brown Agency,
Incorporated; Matewan Insurance and Realty Company; Fresch
and Reed Insurance Service, Incorporated, Plaintiffs-Appellants,
v.
AETNA CASUALTY & SURETY COMPANY, a corporation; Aetna Life
& Casualty Company, a corporation; The Standard
Fire Insurance Company, a corporation,
Defendants-Appellees.
 No. 91-1579.
 United States Court of Appeals,
Fourth Circuit.
 Argued: February 6, 1992
Decided: June 25, 1992
As Amended July 21, 1992.
 
 Argued: Samuel C. P. Baldwin, Sr., Baltimore, Maryland, for Appellants.
 Edgar Allen Poe, Jr., Shuman, Annand & Poe, Charleston, West Virginia, for Appellees.
 Before WILKINS and HAMILTON, Circuit Judges, and OSTEEN, United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Four of the plaintiffs in these consolidated actions initially brought suit in state court in West Virginia. Those cases were removed by the defendants (herein referred to collectively as "Aetna") to the U.S. District Court for the Southern District of West Virginia, and then they filed a motion to dismiss. Subsequently, the fifth plaintiff brought suit directly in the district court. All five plaintiffs are represented by the same counsel and after amendments, each complaint is nearly identical. Several months after answering, Aetna renewed its motion to dismiss each complaint. The plaintiffs opposed the motion and moved for summary judgment on their breach of contract, conversion, and tortious interference claims. The Court treated Aetna's motion as one for summary judgment since it considered matters outside the complaint. After hearing oral arguments, the Court granted Aetna summary judgment as to all claims. The plaintiffs appeal this decision. Finding no error in the district court's decision, we affirm.
 
 I.
 
 2
 The plaintiffs are independent insurance agents who had agency agreements with Aetna, whereby each plaintiff could write insurance policies for its clients. At various times over the last few years (the exact dates are specified in the complaints) Aetna canceled each plaintiff's agency relationship for unprofitability. The terminations were affected according to the terms of the agency agreement each plaintiff had with Aetna. Further, pursuant to the terms of the agreement, Aetna informed each plaintiff that no commissions would be paid on any existing policy which might be renewed after the effective date of the termination of the agency relationship. Aetna also informed all of the plaintiffs' clients insured by Aetna that those policies would not be renewed because their agent no longer represented Aetna. These policyholders were advised to contact their respective agents in order to obtain coverage from another insurer. Automobile liability insurance was among the various types of insurance coverage which had been placed by plaintiffs with Aetna for their clients.
 
 
 3
 Complaints were filed with the West Virginia Insurance Commissioner charging that these nonrenewals were improper under W. Va. Code § 33-6A-4 (1988), which delineates the circumstances in which an insurer may decline to renew an existing automobile insurance policy. Specifically, any automobile insurance policy which has been in effect for two or more years must be renewed if the policy holder so desires, with certain enumerated exceptions, none of which are relevant to this case.
 
 
 4
 In response to these complaints, the Insurance Commissioner issued Informational Letters Nos. 35 and 39 informing Aetna and other companies, that they could not decline to renew automobile liability insurance policies based solely on the termination of the agent who had written the policy. Additionally, Aetna was required to affirmatively inform these policyholders of their statutory right to renewal of their policies. Aetna complied with this directive and sent the required notice to the plaintiffs' clients, which also advised them to contact their agent (i.e., one of the plaintiffs) to discuss their insurance needs.
 
 
 5
 In order to handle renewals by clients of the plaintiffs who did not engage a new, authorized Aetna agent, Aetna converted those policyholders to a "direct" billing system, in which Aetna would send notices of renewal premiums being due directly to the policyholder instead of to the agent and, in turn, would receive payment directly from the insured, rather than through the agent. Further, Aetna made available a system whereby these policyholders could make inquiries concerning, make changes to, or file claims on their Aetna policies directly with Aetna at its own offices or through a toll-free number. Alternatively, Aetna would allow the terminated agents to continue to perform these services, so that they could maintain their business relationship with these clients, but it would not pay them any commissions on renewals or for servicing these policies.
 
 II.
 
 6
 The jurisdiction of the Court in this case is based upon diversity of citizenship and amount in controversy. As such, the law of the forum state applies. The controlling case in the state of West Virginia, the plaintiffs' contentions to the contrary notwithstanding, is Shrewsbery v. National Grange Ins. Co., 183 W. Va. 322, 395 S.E.2d 745 (1990).[1]
 
 
 7
 In Shrewsbery, the plaintiff was an independent insurance agent whose agency agreement with the defendant insurance company, National Grange, had been terminated for unprofitability. National Grange contacted Mr. Shrewsbery's clients who were insured by it to inform them of the termination of the agency relationship and to inform those clients who had automobile insurance coverage of their right to renew the policy by dealing directly with it. The notice to automobile liability policyholders was sent in order to comply with the West Virginia Insurance Commissioner's Informational Letter No. 39 concerning enforcement of W. Va. Code § 33-6A-4. Id. at 746-47. National Grange, pursuant to the terms of its agency agreement with Shrewsbery, paid him commissions on renewals for one year after the termination of the agreement. Id. at 747. Shrewsbery then sued National Grange for breach of contract, tortious interference with his contracts with his clients, and conversion of his expirations. Id. at 747-50. The West Virginia court found for National Grange on all three causes of action.
 
 
 8
 The court held that Shrewsbery had no claim based upon the termination of the contract because the agreement allowed either party to terminate it on ninety days notice and this is exactly what National Grange did. Id. at 751. Further, he did not have a claim based upon any failure by National Grange to pay commissions on renewals of his client's policies because National Grange complied with the terms of the agency agreement regarding the payment of renewal commissions, e.g., it paid them for one year following termination:
 
 
 9
 It has been uniformly decided that the right of an insurance agent to commissions on renewal premiums depends upon the contract existing between the agent and the insurer. The general rule is that unless the agent's contract makes allowance for the payment of commissions on renewal premiums paid by insureds after his termination, he will not be entitled to such commissions after his employment has been rightfully terminated.
 
 
 10
 Id. at 750 (citations omitted). See also Allied Mutual Insurance Co. v. Roberson, 306 F.2d 130, 132 (4th Cir. 1962) (absent an express agreement between the parties, an agent is not entitled to renewals after his agency is lawfully terminated). Additionally, the court held that National Grange did not violate the terms of the agency agreement granting Shrewsbery ownership of his expirations nor did it convert them to its own use.[2] This information was only used by National Grange to notify its insureds of their statutory right to renewal, as required by the Insurance Commissioner. "It cannot be that one can be liable to a private party under a state's tort law for doing exactly that which the state government itself has instructed him to do and threatened him with a penalty for not doing." Id. at 750. Finally, the court held that there could be no cause of action for tortious interference because National Grange was a principal party to the insurance contracts with its insureds and a principal cannot be held liable for tortious interference with its own contract:
 
 
 11
 Mr. Shrewsbery seriously misconstrues the role of an insurance agent. He is not party to a contract with the insured;.... An agent, then, is but an incidental beneficiary to the contract between insured and insurance company. The agent's right to commissions-his economic interest in the insurance contracts-is of no concern to the insured, and solely a matter of contract between the agent and his principal, the insurance company.
 
 
 12
 Id. at 748.
 
 III.
 
 13
 The facts of the present case are nearly identical to those in Shrewsbery and involve the same legal issues. The plaintiffs allege that Aetna breached its contracts with them by failing to pay commissions on clients' policies which were renewed after the termination of the agency agreements. However, as Shrewsbery makes abundantly clear, in West Virginia, this is solely a question of contract. The plaintiffs' agency agreements state in section 3(b) that:
 
 
 14
 Following termination of this Agreement, the commissions specified in the Commission Schedules will not apply to the renewal of an insurance contract which the Company is required by law to renew, unless the Company failed to comply with any notice requirement which would have permitted non-renewal of the contract or unless such commissions are required by law to be paid.
 
 
 15
 (Emphasis added.) As the District Court correctly found, the parties expressly agreed that commissions would not be paid on policies which Aetna was required by law to renew. W. Va. Code § 33-6A-4 required Aetna to renew automobile liability insurance policies which had been in effect for more than two years. Aetna complied with this statute. It gave the required notice, as directed by the Insurance Commissioner, which gave the policyholders the option of placing their automobile insurance with another company. This does not constitute impermissible interference with the plaintiffs' expirations. Moreover, unlike some states, West Virginia does not have a statute requiring the continued payment of renewal commissions after the termination of the agency relationship. Therefore, Aetna was within its rights under the law and the contract in refusing to pay commissions under these circumstances.
 
 
 16
 Second, the plaintiffs allege that Aetna breached an implied covenant of good faith and fair dealing by terminating their agency agreements without cause and by reducing their future commission on renewals to 0%. This claim is also without merit. While some courts have read an implied covenant of good faith and fair dealing into atwill employment contracts, West Virginia does not recognize the doctrine in this context. Shell v. Metropolitan Life Ins. Co., 183 W. Va. 407, 414, 396 S.E.2d 174, 181 (1990). The only exception to the right to terminate such a contract is when the termination violates a substantial public policy. Id. No such violation is alleged here. Nor do the plaintiffs have a tort claim for any alleged breach of good faith or fair dealing. See Cotton v. Otis Elevator Co., 627 F. Supp. 519, 520-21 (S.D.W. Va. 1986), aff'd mem., 841 F.2d 1122 (4th Cir. 1988). Thus, the question of termination is a matter of contract. Section 9(d) of the agency agreements allows for termination by either party upon ninety days notice. Section 3(c) allows Aetna to revise the commission rates on ninety days notice. Because Aetna followed the contract, this claim was properly dismissed.
 
 
 17
 Third, the plaintiffs allege that Aetna "converted" their expirations to its own use by mailing notices to policyholders offering to bill and service them directly if they chose to renew their policies with Aetna. In light of Shrewsbery, there can be no merit in this claim. The plaintiffs are confusing the right to use their expirations with the right to receive commissions on renewals. The purpose of granting an agent a property right in his expirations is to protect his relationship with his clients. The right to receive commissions, as outlined above, is strictly a matter of contract. Aetna never solicited business from the plaintiffs' clients. In fact, Aetna's letters to these policyholders urged them to contact their own agent to discuss their insurance needs. Moreover, Aetna was required by state law to mail such notices explaining the insureds' right to renewal. Aetna's actions in this regard, therefore, cannot be wrongful.
 
 
 18
 Fourth, the plaintiffs allege that Aetna tortiously interfered with their business relationships with their clients. This claim was properly dismissed because Aetna cannot tortiously interfere with its own contracts with its insureds. The plaintiffs are third party beneficiaries to those contracts. Beyond that, there was no impermissible use of the plaintiffs' expirations. In fact, Aetna would have severed its relationship with the plaintiffs' clients entirely, but for the requirements of West Virginia law. Moreover, in its communications with the plaintiffs' clients, Aetna urged them to contact their own agent, thereby giving the plaintiffs the opportunity to place them with another insurer. Finally, Aetna was also willing to let the plaintiffs continue to service these policies, albeit at no commission, so that they could maintain their relationship with these policyholders. Aetna was not required to allow this and could have serviced these accounts directly.
 
 
 19
 Fifth, the plaintiffs claim that they are entitled to quantum meruit recovery because they continued to service these accounts without being paid. This claim was properly dismissed for several reasons. Necessarily, in order to recover under quantum meruit, one must have a reasonable expectation of payment. In this case, the plaintiffs continued to service these accounts with the full knowledge that they would not be paid. As such, they could not have had a reasonable expectation of payment. Moreover, as the District Court reasoned, recovery under quantum meruit is based upon the idea of implied contract. Under West Virginia law, "[a]n implied contract and an express one covering the identical subject matter cannot exist at the same time.... If the latter exists, the former is precluded." Rosenbaum v. Price Construction Co., 117 W. Va. 160, 162, 184 S.E. 261, 263 (1936). The agency agreements under consideration in the present case contemplated that the agent could continue to service an existing policy after termination of the agency relationship.[3] At the same time, the contracts expressly state, in section 3(b), that no commissions will be paid on policy renewals which Aetna was required by law to renew. The parties' agreement is plain and unambiguous. The court will not rewrite the parties' contract simply because one party is no longer satisfied with the bargain he struck.
 
 
 20
 Finally, the plaintiffs allege that they are entitled to civil damages under the RICO statute. This claim is based on the characterization of Aetna's communications with its policyholders and the Insurance Commissioner as "mail fraud." This claim is likewise without merit. To make out a civil action for damages under RICO, a private plaintiff must make two closely related showings in order to have standing to prosecute a claim: (1) that he has suffered injury to his business or property; and (2) that this injury was caused by the predicate acts of racketeering activity that make up the violation of 18 U.S.C. § 1962. Brandenburg v. Seidel, 859 F.2d 1179, 1187 (4th Cir. 1988) (citations omitted). The plaintiffs can make neither showing in this case. Aetna's refusal to pay them commissions on post-termination renewals of automobile insurance policies was not wrongful and therefore did not "injure" them in a manner contemplated under RICO. Further, even if, arguendo, Aetna's communications to the insureds contained misrepresentations, this could not be the proximate cause of Aetna's failure to pay them commissions. Thus, this claim was also properly dismissed.
 
 AFFIRMED
 
 
 [1]
 The plaintiffs' only attempt to distinguish Shrewsbery is that it involved an employee of an insurance company, while plaintiffs are independent agents. This contention cannot prevail. The Court specifically said that Shrewsbery was "an independent insurance agent ... " Id. at 746
 
 
 [2]
 The Fourth Circuit has defined"expirations" in the insurance field to include "the records of an insurance agency by which the agent has available a copy of the policy issued to the insured or records containing the date of the insurance policy, the name of the insured, the date of its expiration, the amount of insurance, premiums, property covered and terms of insurance. This information enables the agent to contact the insured before the existing contract expires and arms him with the information essential to secure another policy and to present to the insured a solution for his insurance requirements. It has been determined that this information is of vital assistance to the agency in carrying on the insurance business and it has become, in the insurance field, recognized as a valuable asset in the nature of goodwill." Phillips & Co. v. Penn. Threshermen & Farmers' Mut. Casualty Ins. Co., 199 F.2d 244, 246 (4th Cir. 1952). This definition and rationale were adopted by the Shrewsbery court
 
 
 [3]
 Section 9(d)(4) states that"The Agent will continue to be authorized, subject to the underwriting rules and practices of the Company, to effect any necessary changes in outstanding policies of insurance, provided that the expiration dates of such policies may not be extended by issuance of replacement policies or other means."