425 S.E.2d 214

**Raoul Eddie LILLY, Plaintiff Below, Appellant,**

v.

**OVERNIGHT TRANSPORTATION COMPANY, A Virginia Corporation, Doing Business In The State Of West Virginia, Defendant Below, Appellee.**

No. 21003.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 6, 1992.

Decided Dec. 17, 1992.

Jerome J. McFadden, Gibson, McFadden & Ash, Princeton, for appellant.

W.T. Cranfill, Jr., Michael V. Matthews, Blakeney & Alexander, Charlotte, NC and Wayne L. Evans, Katz, Kantor & Perkins, Bluefield, for appellee.

WORKMAN, Justice:

This case is before the Court upon a February 25, 1992, order from the United States Court of Appeals for the Fourth Circuit which certified the following question to this Court: "[W]hether sections 17C–15–1(a) [ (1991) ], 17C–15–31 [ (1991) ], and 24A–5–5(J) [ (1992) ] of the West Virginia Code (and the regulation[1] issued there-

---

1. The regulation referred to is section 2.3 "Safety rules and regulations" of § 150–9–2 which is essentially rules and regulations applicable to all motor carriers. 10 W.Va.C.S.R. § 150–9–2.3. This regulation is essentially an adoption by the West Virginia Public Service Commission of the

under) establish a substantial public policy of West Virginia so that an employee may maintain an action for wrongful discharge under the alleged circumstances of this case[?]" Upon review of the arguments of the parties and all the matters of record submitted before this Court, we hold that a cause of action may exist under West Virginia Code §§ 17C–15–1(a), 17C–15–31 and 24A–5–5(j).

This action began when the Plaintiff below and Appellant herein, Mr. Lilly, filed suit in the Circuit Court of Mercer County, West Virginia, against the Defendant, Overnight Transportation Company, Inc. ("Overnight"), for wrongful discharge, negligent administration of employment procedure, breach of contract, breach of covenant of good faith and fair dealing, and intentional infliction of emotional distress. Overnight removed the action to the United States District Court for the Southern District of West Virginia based on diversity of citizenship. The district court subsequently granted Overnight's motion for summary judgment on all claims, and Mr. Lilly appealed to the United States Circuit Court of Appeals for the Fourth Circuit. The Fourth Circuit has affirmed the district court's granting of summary judgment on all of the Appellant's claims except the action for wrongful discharge.

The Appellant was employed as a truck driver by Overnight from November 17, 1972, until November 2, 1988. On August 14, 1988, he was scheduled to drive a shipment of veneer from Bluefield, West Virginia, to Norfolk, Virginia, for shipment overseas. He left the Overnight yard and performed brake tests on the trailer containing the veneer. After determining that the trailer brakes were not working at all he returned to the Overnight yard. He contacted the mechanic on duty, Darrell Blanton, so that the brakes could be repaired. Mr. Blanton attempted to repair the brakes. The Appellant once again left the Overnight yard, but was concerned that the vehicle was still unsafe to operate when the

federal regulations concerning brake performance of motor vehicles. *See* 49 C.F.R. §§ 393.52(a)(1)–(3) and 393.48(a) (1991).

brakes once again failed, so he returned again to the Overnight yard.

The Appellant attempted to contact Dennis Cole, his immediate supervisor and terminal manager of the Overnight yard. Mr. Cole was not at home. Consequently, the Appellant contacted Marty Howell, a manager with Overnight in Gaffney, South Carolina. The Appellant told Mr. Howell that he felt that the truck was unsafe to operate on the road due to the brake failures. Mr. Howell agreed and instructed Mr. Lilly not to take the vehicle out of the yard until the brakes were fixed.

The next morning, August 15, 1988, the Appellant reported to work and conveyed the events from the previous day to Dennis Cole. Mr. Lilly alleges that thereafter his relationship with Mr. Cole deteriorated because the load of veneer was not delivered to Norfolk and failed to make the overseas shipment.

On November 2, 1988, when the Appellant was driving his truck on Interstate 77, Overnight Safety Supervisor Donald Cole, the brother of Dennis Cole, used a radar gun to clock the Appellant's speed at " 'approximately 70 miles per hour.' " Donald Cole then contacted the Appellant by citizens' band radio and ordered him to pull off the road at the next safe exit. After the Appellant exited, Donald Cole told Mr. Lilly that he had been speeding and immediately terminated him.

At the time the Appellant was discharged, he was operating a replacement tractor-trailer [2] which the Appellant believed had a faulty speedometer. The Appellant had reported the faulty speedometer to Overnight in a driver's vehicle inspection report on October 30, 1988. The vehicle's speedometer was not repaired by Overnight. Moreover, Mr. Lilly's truck had a speedometer which was attached to a recording device which records the speed of the vehicle on a circular chart. The Appellant alleges that at the time of his dis-

2. The tractor-trailer he usually operated had broken down during a trip he was making from the west coast.

charge, his chart speed was sixty-eight miles per hour.[3]

■ The issue before this Court is one of first impression. Whether the plaintiff has a cause of action for wrongful discharge depends upon whether West Virginia Code §§ 17C–15–1(a), 17C–15–31 and 24A–5–5(j) establish a substantial public policy in this state. The Appellant argues that West Virginia Code §§ 17C–15–1(a), 17C–15–31 and 24A–5–5(j) establish a substantial public policy for regulating the safety of both motor vehicles and common carriers in this state. Moreover, the Appellant argues that had he actually driven the trailer with defective brakes, it would have placed both him and the public in danger.[4] The Appellee, however, argues that 1) the certification of the question is clearly improper in this case and was granted in contravention of West Virginia law because ample controlling precedent exists; and, 2) the facts underlying the Appellant's purported claim are insufficient to support a meaningful expansion of wrongful discharge law.

West Virginia Code § 51–1A–1 (1981) clearly provides that

> [t]he supreme court of appeals of West Virginia may answer questions of law certified to it by ... a court of appeals of the United States ... when requested by the certifying court if there are involved in any proceeding before it questions of law of this State which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of appeals of this State.

There is no controlling precedent as to whether West Virginia Code §§ 17C–15–1(a), 17C–15–31, and 24A–5–5(j) establish a substantial public policy from which an employee may base a wrongful discharge ac-

tion. Consequently, certification is a proper means to determine this issue.

■ We first examine this Court's decision in *Harless v. First National Bank in Fairmont*, 162 W.Va. 116, 246 S.E.2d 270 (1978). In *Harless*, the plaintiff alleged that he was discharged from his employment at the bank because he brought to the attention of his superiors that the bank " 'had intentionally and illegally overcharged customers on prepayment of their installment loans and unintentionally did not make proper rebates.' " *Id.* at 118, 246 S.E.2d at 272. This Court held that

> [t]he rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principal [sic], then the employer may be liable to the employee for damages occasioned by this discharge.

*Id.* at 116, 246 S.E.2d at 271. Moreover, we concluded that a substantial public policy would be frustrated if an employee was terminated because of his efforts to ensure that his employer complied with the West Virginia Consumer Credit and Protection Act and was denied a cause of action. *See id.* at 125–26, 246 S.E.2d at 275–76.

This Court has already recognized rights of action for wrongful discharge in favor of an employee who worked in a mine and who refused to " 'falsify certain safety reports' " concerning a safety inspection at the employee's plant in violation of the West Virginia Mine Safety Act. *Collins v. Elkay Mining Co.*, 179 W.Va. 549, 550, 371 S.E.2d 46, 47 (1988). Also, in *Wiggins v. Eastern Associated Coal Corp.*, 178 W.Va. 63, 357 S.E.2d 745 (1987), we recognized that where the administrative remedy was inadequate, it was not an exclusive remedy and that a cause of action existed for an

---

**3.** According to the deposition of Dennis Cole contained in the record, the significance of the 68 miles per hour is that pursuant to Overnight's "Policy on Speeding and Following Too Close, and Accidents," if a driver is observed driving under 69 miles per hour and it is his first violation, the violation would not result in his termination from employment.

**4.** It is important to note that the Appellee does not acknowledge that the employee was fired for the reason alleged. Moreover, all the factual determinations are ones which must be left to a jury.

employee who was reprimanded and transferred for ordering a roof bolting machine be shut down to correct a problem with ventilation and then was discharged for refusing to operate an improperly wired roof bolting machine until it was fixed. *See generally* Theresa Ludwig Kruk, Annotation, *Liability for Discharge of At-Will Employee for In–Plant Complaints or Efforts Relating to Working Conditions Affecting Health or Safety,* 35 A.L.R. 4th 1031 (1985).

Here, the Appellant alleges that, similar to *Collins* and *Wiggins,* West Virginia Code §§ 17C–15–1(a), 17C–15–31 and 24A–5–5(j) form the basis for a substantial public policy against terminating an employee for reporting safety violations. West Virginia Code § 17C–15–1(a) provides, in pertinent part, that:

> It is a misdemeanor for any person to drive or move or for the owner to cause or knowingly permit to be driven or moved on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person, or which does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this article, or which is equipped in any manner in violation of this article, or for any person to do any act forbidden or fail to perform any act required under this article.

Moreover, West Virginia Code § 17C–15–31 sets forth in specific detail the brake equipment required for all types of motor vehicles, the performance ability of the brakes and the requirement that the brakes be maintained in good working order. Finally, West Virginia Code § 24A–5–5(j) provides in pertinent part for the "[p]romulga[tion] [of] safety rules and regulations applicable to motor vehicles subject to the provision of this chapter [which deals specifically with motor carriers....]" [5]

West Virginia Code § 24A–1–1 (1992) best sets forth the public policy of the state:

> It is hereby declared to be the purpose and policy of the Legislature in enacting this chapter [concerning motor carriers for hire] to confer upon the public service commission of West Virginia ... the ... duty to supervise and regulate the transportation of persons and property for hire by motor vehicles upon or over the public highways of this state so as to: (a) Protect the safety and welfare of the traveling and shipping public in their use of transportation agencies by motor vehicle....

It is not necessary to go into an in-depth analysis of each of these respective statutes in order to conclude that the legislature intended that a motor vehicle should not be operated on the streets and highways of this state if the vehicle is in such an unsafe working condition as to endanger the safety of the general public. It is clear that operating a motor vehicle, especially one such as in this case a 40,000 pound tractor-trailer, with defective brakes would certainly contravene the intention of the legislature as reflected by the above-mentioned statutes and particularly, the criminal sanction provided for wilful violations of West Virginia Code § 17C–15–1(a).

Consequently, we conclude that the legislature intended to establish a clear and unequivocal public policy that the public should be protected against the substantial danger created by the operation of a vehicle in such an unsafe condition as to endanger the public's safety. Thus, we hold that a cause of action for wrongful discharge may exist under West Virginia Code § 17C–15–1(a), § 17C–15–31 and § 24A–5–5(j), where an employee is discharged from employment in retaliation for refusing to operate a motor vehicle with brakes that are in such an unsafe working condition that operation of the vehicle would create a substantial danger to the safety of the public. Whether the nature of the unsafe condition of a vehicle is sufficient to create a substantial danger to the safety of the

---

**5.** It is from this statute that section 2.3 "Safety rules and regulations" of § 150–9–2 of the rules and regulations applicable to all motor carriers was enacted. *See* 10 W.Va.C.S.R. § 150–9–2.3.

public is a factual determination.[6] Clearly, however, where such substantial danger is created, the Appellant's discharge from employment for refusing to operate such a vehicle would certainly thwart a substantial public policy.

The recognition of a cause of action in the present case is in line with this Court's previous decisions where causes of action were recognized for wrongful discharge involving violations of substantial public policies. The common denominator of all these cases is that they not only involve individual employment rights for the employee, but also further the strong public policy of protection of the general public. *See Collins*, 179 W.Va. at 549, 371 S.E.2d at 46; *Wiggins*, 178 W.Va. at 63, 357 S.E.2d at 745; *Harless*, 162 W.Va. at 116, 246 S.E.2d at 270.

Based upon the foregoing opinion, the certified question presented to this Court by the United States Circuit Court of Appeals for the Fourth Circuit has been answered. The action is hereby dismissed from the docket of this Court.

Certified Question answered.

---

**6.** Likewise, whether the employee was terminated in retaliation for refusal to operate such a vehicle is a factual determination in each case.