IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2019 Term

_____

No. 19-0317

_____

FILED

**November 22, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

CHRISTINE BLANDA,
Petitioner

v.

MARTIN & SEIBERT, L.C.,
WALTER M. JONES III, GEOFFREY A. HADDAD, MICHAEL M. STEVENS,
E. KAY FULLER, SUSAN R. SNOWDEN, AND NIKKI MOORE GRESS,
Respondents

_____

Certified Question from the United States District Court
for the Southern District of West Virginia, Charleston Division
The Honorable John T. Copenhaver, Judge
Civil Action No. 2:16-cv-957

CERTIFIED QUESTION ANSWERED

_____

Submitted: October 16, 2019
Filed: November 22, 2019

Richard Neely, Esq.
NEELY & CALLAGHAN
Charleston, West Virginia
Counsel for the Petitioner

Richard M. Wallace, Esq.
Daniel J. Burns, Esq.
Charleston, West Virginia
Counsel for the Respondents

CHIEF JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE ARMSTEAD, deeming himself disqualified, did not participate in the decision of this case.

JUDGE WHARTON, sitting by temporary assignment.

JUSTICE HUTCHISON, deeming himself disqualified, did not participate in the decision of this case.

JUDGE EWING, sitting by temporary assignment.

JUSTICE WORKMAN dissents and reserves the right to file a dissenting opinion.

SYLLABUS BY THE COURT

1. "A *de novo* standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court." Syllabus Point 1, *Light v. Allstate Ins. Co*., 203 W. Va. 27, 506 S.E.2d 64 (1998).

2. "The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge." Syllabus, *Harless v. First Nat'l Bank in Fairmont*, 162 W.Va. 116, 246 S.E.2d 270 (1978).

3. "To identify the sources of public policy for purposes of determining whether a retaliatory discharge has occurred, we look to established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions." Syllabus Point 2, *Birthisel v. Tri-Cities Health Servs. Corp*., 188 W.Va. 371, 424 S.E.2d 606 (1992).

4. "Inherent in the term 'substantial public policy' is the concept that the policy will provide specific guidance to a reasonable person." Syllabus Point 3, *Birthisel v. Tri-Cities Health Servs. Corp*., 188 W.Va. 371, 424 S.E.2d 606 (1992).

5. West Virginia Code § 61-3-24 (2014) does not constitute a substantial public policy under *Harless v. First National Bank*, 162 W. Va. 116, 246 S.E.2d 270 (1978), and its progeny, to protect an employee of a non-public employer who reported suspected criminal conduct to the appropriate authority and claims to have been retaliated against as a result.

WALKER, Chief Justice:

Christina Blanda was an accounts receivable clerk employed by the law firm of Martin & Seibert, L.C. She claims that she was fired in retaliation for voicing her concerns about illegal billing practices by the firm. She first filed a whistleblower claim under the Dodd-Frank Act[1] in the United States District Court for the Southern District of West Virginia, but her claim was rendered not viable by a recent decision of the Supreme Court of the United States.[2] Now, she contends that her only recourse is a common law unlawful discharge claim under *Harless v. First National Bank in Fairmont.*[3] She alleges that West Virginia Code § 61-3-24 is a substantial public policy sufficient to support her *Harless* claim and Respondents disagree. So, this case is before us on the following certified question from the District Court:

> Does West Virginia Code § 61-3-24 constitute a substantial public policy of the State of West Virginia that would support a cause of action for wrongful discharge in violation of public policy pursuant to *Harless v. First National Bank*, 162 W.Va. 116 [246 S.E.2d 270] (1978), and its progeny?

We reformulate the certified question and answer it in the negative.

---

[1] 15 U.S.C. § 78u-6 (2012).

[2] *Digital Realty Trust, Inc. v. Somers*, 138 S.Ct. 767, ___ U.S. ___ (2018).

[3] 162 W. Va. 116, 246 S.E.2d 270 (1978).

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Because the parties did not accompany the certified question with a statement of facts,[4] the District Court provided a brief statement of the case from pending motions for summary judgment that contain "[t]he facts relevant to the question, showing fully the nature of the controversy out of which the question arose."[5]  For purposes of considering the single question of law before us, we rely on the facts as relayed by the District Court, which we summarize here.

Ms. Blanda was an accounts receivable clerk employed by Martin & Seibert, L.C. and was tasked with billing clients for the hours worked by the firm's employees and attorneys.  Ms. Blanda alleges that she began noticing irregularities such as billing clients for paralegal and secretary services at the attorney's hourly rate.  She decided in 2013 that the firm was engaging in illegal billing practices.  Ms. Blanda began persistently voicing her concerns to others at the law firm, including the individual Respondents.[6]  The law firm never took formal disciplinary action against Ms. Blanda for her complaints, and she did not threaten to report its activities to an outside law enforcement agency or elsewhere.  But,

---

[4] Under West Virginia Code § 51-1A-6(b) (Repl. Vol. 2016), "[i]f the parties cannot agree upon a statement of facts, then the certifying court shall determine the relevant facts and shall state them as a part of its certification order."

[5] W. Va. Code § 51-1A-6(a)(2) (Repl. Vol. 2016).

[6] For purposes of this opinion, we need only refer to Respondents Martin & Seibert, L.C., Walter M. Jones, III, Geoffrey A. Haddad, Michael M. Stevens, E. Kay Fuller, Susan R. Snowden, and Nikki Moore Gress collectively, rather than individually.

Ms. Blanda believed that actions taken by the law firm showed an intent to discharge her in retaliation for voicing her concerns.

For example, in early 2014, Ms. Blanda was instructed to begin cross-training with another employee. But Ms. Blanda claims that it amounted to her training the other employee with no reciprocal training. Ms. Blanda also alleges that, later that year, the firm's policy encouraging employees to discuss concerns with their supervisor was taken away from her when one of the Respondents told her that she could no longer express her concerns about the law firm's billing practices. On December 4, 2014, after meeting with some of the Respondents, Ms. Blanda was issued a formal warning notice pertaining to her job performance. Ms. Blanda asserts that the claims in the notice were false.

And, on January 23, 2015, Ms. Blanda noticed that the law firm had posted her job for hiring. Ms. Blanda immediately contacted one of the law firm's attorneys, Lisa Green, who had become aware of the billing irregularities. According to the facts presented by the District Court, Ms. Green suspected that the law firm may be setting up Ms. Blanda to take the blame for them. Ms. Green confirmed her suspicions and immediately contacted attorney Michael Callaghan, former Assistant United States Attorney and chief of the Criminal Division in the Southern District of West Virginia, for advice on reporting Respondents' conduct to the West Virginia State Bar and the Federal Bureau of

Investigations (FBI). According to Ms. Green, Mr. Callaghan contacted the FBI that day; in turn, Ms. Green advised Ms. Blanda to contact Mr. Callaghan for advice.

After speaking with Mr. Callaghan, Ms. Blanda believed that she should gather evidence to protect herself. On January 26, 2015, Ms. Blanda e-mailed 227 attachments to herself that consisted of raw billable hour data from the law firm's timekeeping files. The law firm's monitoring system detected the e-mails and Ms. Blanda was immediately fired for violating the firm's employee handbook policy prohibiting the disclosure of confidential information, including compensation data, and subjecting violators to termination. After she was fired, Ms. Blanda also took paper files from the law firm. Ultimately, the FBI "raided" the law firm based, in part, on information Ms. Blanda provided to them after her discharge. It has since disbanded as a result. Ms. Blanda later applied for unemployment benefits stating that she was discharged for emailing timesheets to herself in violation of firm policy. She reiterated the same during her deposition.

Ms. Blanda then filed a whistleblower claim against Respondents under the Dodd-Frank Act.[7] But, because Ms. Blanda did not report the alleged violation to the Securities and Exchange Commission, her claim became no longer viable following the

_____

[7] 15 U.S.C. § 78u-6.

4

decision of the Supreme Court of the United States in *Digital Realty Trust, Inc. v. Somers*.[8]

So, Ms. Blanda contends that her only recourse is a common law retaliatory discharge

claim under *Harless v. First National Bank in Fairmont*,[9] under which she alleges that she

was discharged in violation of the substantial public policy embodied in West Virginia

Code § 61-3-24 (obtaining money by false pretenses).[10]  Respondents counter that our

---

[8] 138 S.Ct. 767, __ U.S. __ (holding that for a person to qualify as a whistleblower under Dodd-Frank, the person must have reported the violation to the Securities and Exchange Commission).

[9] 162 W. Va. 116, 246 S.E.2d 270 (1978).

[10] West Virginia Code § 61-3-24 (Repl. Vol. 2014) provides, in relevant part, as follows:

> (a)    (1) If a person obtains from another by any false pretense, token or representation, with intent to defraud, any money, goods or other property which may be the subject of larceny; or (2) If a person obtains on credit from another any money, goods or other property which may be the subject of larceny, by representing that there is money due him or her or to become due him or her, and assigns the claim for such money, in writing, to the person from whom he or she obtains such money, goods or other property, and afterwards collects the money due or to become due, without the consent of the assignee, and with the intent to defraud; (3) Such person is guilty of larceny. If the value of the money, goods or other property is one thousand dollars or more, such person is guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than one year nor more than ten years, or, in the discretion of the court, be confined in jail not more than one year and be fined not more than two thousand five hundred dollars. If the value of the money, goods or other property is less than one thousand dollars, such person is guilty of a misdemeanor, and, upon conviction thereof, shall be confined in jail not more than one year or fined not more than two thousand five hundred dollars, or both.
>
> . . . .

decision in *Swears v. R.M. Roach & Sons, Inc.*,[11] has already considered this issue and forecloses Ms. Blanda's theory. The District Court found that a certified question was appropriate in this circumstance, as it believes that an authoritative determination regarding this question will aid employers, discharged employees, and courts in identifying situations where *Harless* provides an alternative means of recourse when the Dodd-Frank Act's whistleblower protections are unavailable.

## II. STANDARD OF REVIEW

We undertake plenary review of the legal question presented in this case. As this Court has previously stated, "[a] de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court."[12]

---

> (f) Prosecution for an offense under this section *does not bar or otherwise affect adversely any right or liability to damages, forfeiture or other civil remedy arising from any or all elements of the criminal offense.*

(Emphasis added).

[11] 225 W. Va. 699, 696 S.E.2d 1 (2010).

[12] Syl. Pt. 1, *Light v. Allstate Ins. Co.*, 203 W. Va. 27, 506 S.E.2d 64 (1998).

6

## III. DISCUSSION

Under long-standing West Virginia law, employees are considered to be employed at will, meaning that absent a contract or statute to the contrary, they serve at the will and pleasure of their employer and can be discharged at any time, with or without cause.[13] The exception to this doctrine of employment at-will that we take up in answering the certified question before us is referred to as the public policy exception, which this Court first recognized in *Harless v. First National Bank.* In that case, the Court held

> [t]he rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.[14]

So, "a cause of action for wrongful discharge exists when an aggrieved employee can demonstrate that his/her employer acted contrary to a substantial public policy in effectuating the termination."[15] As we have explained, "'public policy' is that principle of law which holds that no person can lawfully do that which has a tendency to be injurious

---

[13] *Kanagy v. Fiesta Salons, Inc.*, 208 W. Va. 526, 529, 541 S.E.2d 616, 619 (2000); *Wright v. Standard Ultramarine & Color Co.*, 141 W. Va. 368, 382, 90 S.E.2d 459, 468 (1955).

[14] Syl., *Harless*, 162 W. Va. 116, 246 S.E.2d 270.

[15] *Feliciano*, 210 W.Va. at 745, 559 S.E.2d at 718.

7

to the public or against public good . . . even though no actual injury may have resulted therefrom in a particular case to the public."[16]

Determining what constitutes a substantial public policy for purposes of a *Harless* claim is another matter. As we held in *Birthisel v. Tri-Cities Health Servs. Corp.*,[17] "[t]o identify the sources of public policy for purposes of determining whether a retaliatory discharge has occurred, we look to established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions." In that case, we clarified that our use of "substantial" to modify "public policy" in *Harless* was expressly "designed to exclude claims based on insubstantial considerations."[18] Elaborating on this concept, we stated:

> The term "substantial public policy" implies that the policy principle will be clearly recognized simply because it is substantial. An employer should not be exposed to liability *where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations*.[19]

---

[16] *Cordle v. General Hugh Mercer Corp.*, 174 W.Va. 321, 325, 325 S.E.2d 111, 114 (1984) (internal quotations and citations omitted).

[17] Syl. Pt. 2, *Birthisel v. Tri-Cities Health Servs. Corp.*, 188 W.Va. 371, 424 S.E.2d 606 (1992).

[18] *Id*. at 377, 424 S.E.2d at 612.

[19] *Id*. (Emphasis added).

8

We also held in syllabus point three of *Birthisel* that "[i]nherent in the term 'substantial public policy' is the concept that the policy will provide *specific guidance to a reasonable person*."[20] Later, in *Feliciano v. 7–Eleven, Inc.*, we observed that "to be substantial, a public policy must not just be recognizable as such but be so widely regarded as to be evident to employers and employees alike."[21]

In *Birthisel*, we considered whether nursing regulations and general language contained in the social workers licensing statute met the threshold definition of substantial public policy.[22] In concluding that the plaintiff had failed to establish the existence of a substantial public policy, we emphasized the need for specific guidance:

> Neither of these provisions contain any specific guidance. Their general admonitions as to the requirement of good care for patients by social workers do not constitute the type of substantial and clear public policy on which a retaliatory discharge claim can be based. If such a general standard could constitute a substantial public policy, it would enable a social worker to make a challenge to any type of procedure that the worker felt violated his or her sense of good service.[23]

In rejecting plaintiff's contentions, we recognized that "[m]ost of our retaliatory discharge cases involve violations of statutes that we deem to articulate a substantial public policy."[24]

---

[20] *Id.* at Syl. Pt. 3 (Emphasis added).

[21] 210 W.Va. 740, 745, 559 S.E.2d 713, 718 (2001).

[22] *Birthisel* at 377–78, 424 S.E.2d at 612–13 (emphasis supplied).

[23] *Id.*

[24] *Id*. at 376, 424 S.E.2d at 611 (citations omitted).

As we have warned, courts are to "proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject."[25] In addition, "despite the broad power vested in the courts to determine public policy," courts are to "exercise restraint" when using such power.[26] So, "[i]t is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community so declaring."[27]

Ms. Blanda argues that "it should be obvious that stealing money by stealth, armed force, or trick contravenes a substantial West Virginia public policy to the extent that West Virginia continues to be a Judeo-Christian polity." She also argues that West Virginia Code § 61-3-24(f) provides that prosecution under that statute "does not bar or otherwise affect adversely any right or liability to damages, forfeiture, or other civil remedy arising from any or all elements of the criminal offense." This provision, Ms. Blanda contends, is a specific legislative mandate showing that the Legislature intended that there

---

[25] *Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 135, 141, 506 S.E.2d 578, 584 (1998) (internal citations omitted).

[26] *Id.*, 203 W.Va. at 141, 506 S.E.2d at 584. *See also Shell v. Metropolitan Life Ins. Co.,* 183 W.Va. 407, 413, 396 S.E.2d 174, 180 (1990) ("We have exercised the power to declare an employer's conduct as contrary to public policy with restraint . . . and have deferred to the West Virginia legislature because it 'has the primary responsibility for translating public policy into law.'" (citations omitted)).

[27] *Tiernan*, 203 W.Va. at 141, 506 S.E.2d at 584 (internal citations omitted).

be a private right of action arising from the criminal statute. Ms. Blanda acknowledges that this Court has not yet determined whether stealing contravenes a substantial public policy, but urges us to find that the statute is persuasive evidence that stealing violates the public policy of this State.

Respondents counter that Ms. Blanda's theory is foreclosed by our prior precedent in *Swears v. R.M Roach & Sons, Inc.*,[28] in which this Court held that the West Virginia statutes criminalizing embezzlement and larceny—West Virginia Code § 61-3-20 and § 61-3-13—do not "form the basis for a possible violation of a substantial public policy."[29] Respondents contend that the statute here, West Virginia Code § 61-3-24, which criminalizes obtaining money by false pretenses, is in the very same chapter of the criminal code as the statutes at issue in *Swears* and deals with virtually identical conduct.

In *Swears*, a former Controller of R.M. Roach believed that his direct supervisor, Steven Roach, had committed serious fiscal misconduct and reported his findings to the other two main principals of the company.[30] Mr. Swears alleged that, following his report to the other company principals, Mr. Roach retaliated against him to

---

[28] 225 W. Va. 699, 696 S.E.2d l.

[29] *Id*. at 705, 696 S.E.2d at 6–7.

[30] *Id*. at 701–02, 696 S.E.2d at 3–4.

11

try to force him to resign.[31]  After he was ultimately terminated, Mr. Swears filed an action alleging wrongful discharge in violation of public policy.  Specifically, he claimed that he was terminated in retaliation for his report that Steven Roach was engaging in alleged "improper conduct detrimental to the company" and conduct "in breach of Mr. Roach's fiduciary duties owed to the company and that amounted to misappropriation of company funds" in violation of state statutory and common law.[32]  He also claimed that his termination "violated substantial public policy principles governing fiduciary relationships, misappropriation of funds and corporate requirements and standards."[33]

The issue in *Swears* was whether an employee's reporting of alleged criminal conduct committed by a principal of a private company amounted to a substantial public policy, providing a basis for a *Harless* claim.[34]  Mr. Swears alleged that communication of possible criminal conduct to a company principal constituted a substantial public policy. In determining that Mr. Swears had failed to identify any source of public policy that his employer had contravened, this Court stated:

> While Mr. Swears cites to two criminal statutes to support his assertions, this Court takes note that the statutes, W. Va. Code § 61–3–20 (2004) (Repl. Vol. 2005) and W. Va. Code § 61–3– 13 (1994) (Repl. Vol. 2005), deal with embezzlement and

---

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.* at 703, 696 S.E.2d at 5.

larceny, respectively. Mr. Swears explains that the "West Virginia Legislature has articulated a clear public policy against such misconduct by criminalizing embezzlement and larceny." However, neither criminal statute expresses a public policy component such that the statutes may form the basis for a possible violation of a substantial public policy to support a claim for wrongful discharge. The mere citation of a statutory provision is not sufficient to state a cause of action for retaliatory discharge without a showing that the discharge violated the public policy that the cited provision clearly mandates.[35]

Rejecting Mr. Swears's attempt to elevate his complaint to the company principals to the level of a violation of substantial public policy, this Court explained that the allegations constituted an alleged violation of the financial interests of a private corporation. Critically, they did not involve a "claimed violation of public policy or anything that might be injurious to the public good."[36] Thus, we affirmed the circuit court's grant of summary judgment to the employer in that case.[37]

In footnote 8 of *Swears*, we also hypothesized in dicta, with no legal analysis, that reporting alleged criminal conduct to law enforcement officials could call for more analysis, stating:

if a case arises in which such a report is made to the proper authorities, such a factual scenario *could* present a question as to whether there is a substantial public policy to protect an

---

[35] *Swears*, 225 W. Va. at 705, 696 S.E.2d at 7 (footnotes omitted).

[36] *Id.*

[37] *Id.*

13

employee, of a private employer, who reports suspected criminal conduct to the appropriate governmental authorities and is retaliated against as a result of such reporting. *See supra,* note 7.[38]

Ms. Blanda argues that this case is not like *Swears*, but is more akin to *Lilly v. Overnight Transp. Co.*,[39] in which this Court held that a worker who was terminated for refusing to drive a truck with defective brakes had a cause of action under *Harless*. Ms. Blanda contends that, much like the driver in *Lilly*, she did not want to be part of an illegal scheme to defraud the law firm's clients.

Ms. Blanda's argument ignores an important distinction. Citing *Lilly*,[40] this Court observed in footnote 9 of *Swears* that our wrongful discharge cases that have reviewed assertions of criminal conduct have found a substantial public policy violation to exist *only when* the claimant was terminated for *refusing* to engage in illegal activity.[41] But Ms. Blanda does not allege retaliation because she *refused* to engage in an illegal activity, but rather, because she engaged in whistleblower activity by internally voicing her

---

[38] *Id*. at n.8 (Emphasis added) (citation omitted).

[39] 188 W.Va. 538, 425 S.E.2d 214 (1992).

[40] *Id*.

[41] *Swears*, 225 W. Va. at 705 n.9, 696 S.E.2d at 7 n.9 (emphasis added).

14

concerns about the billing irregularities and alleged criminal activity to another firm employee. Thus, *Lilly* is not applicable to this case.[42]

In light of this, and in light of footnote 8 in *Swears* and the specific set of facts presented by the District Court here, we find the question certified by the District Court is too broad. So, we reformulate the certified question under our power to do so[43] as follows: Does West Virginia Code § 61-3-24 (Repl. Vol. 2014) constitute a substantial public policy under *Harless v. First National Bank*, 162 W. Va. 116, 246 S.E.2d 270 (1978), and its progeny, to protect an employee of a non-public employer who reported suspected criminal conduct to the appropriate authority and claims to have been retaliated against as a result? We are firmly convinced that it does not. As this Court has stated

---

[42] And, the employee's *refusal* to engage in illegal activity was not the only point on which *Lilly* turned. In *Lilly*, this Court concluded that a wrongful discharge cause of action existed specifically because our statutory and common law articulated a clear and unequivocal public policy of this State that pertained to the employer. *See Lilly* at 541, 425 S.E.2d at 217 (discussing the legislature's established public policy in West Virginia Code § 24A-1-1, (setting forth specific safety directive concerning motor carriers) West Virginia Code § 17C-15-1(a) (misdemeanor statute for driving vehicle in unsafe condition as to endanger any person), and § 17C-15-31 (detailing specifically required braking equipment) that the general public should be protected against substantial danger created by operation of vehicle in unsafe condition).

[43] "When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under . . . the Uniform Certification of Questions of Law Act found in *W. Va. Code*, 51-1A-1, *et seq*[.]" Syl. Pt. 3, in part, *Kincaid v. Mangum*, 189 W. Va. 404, 432 S.E.2d 74 (1993).

15

many times before, "[o]ur retaliatory discharge cases are generally based on a public policy articulated by the legislature."[44]   And, as we stated in *Birthisel*,

> The term "substantial public policy" implies that the policy principle will be clearly recognized simply because it is substantial. An employer should not be exposed to liability where a public policy standard *is too general to provide any specific guidance or is so vague that it is subject to different interpretations*.[45]

---

[44] *See Shell v. Metropolitan Life Ins. Co.*, 183 W.Va. at 413, 396 S.E.2d at 180 (reiterating that where a statute is designed to protect one specific group and not a broad societal interest, there was no substantial public policy interest in insurance agent's allegations that he was terminated for objecting to his employer's illegal use of client funds to finance new insurance policies) (internal citations omitted). *See also Birthisel*, 188 W.Va. 371, 424 S.E.2d 606 (holding that lack of legislative enactment precluded social worker's claim that she was discharged from her employment for refusal to alter certain patient notes in contravention of regulations established by the West Virginia Social Work Board, even assuming that her assertions were true); *Collins v. Elkay Mining Co.*, 179 W.Va. 549, 371 S.E.2d 46 (1988) (finding right of action for retaliatory discharge based on a refusal to violate the West Virginia Mine Safety Act, West Virginia Code § 22A-1A-20); *McClung v. Marion County Comm'n*, 178 W.Va. 444, 360 S.E.2d 221 (1987) (finding right of action for retaliatory discharge based on a right to file for overtime wages pursuant to West Virginia Code § 21-5C-8); *Cordle v. General Hugh Mercer Corp.*, 174 W.Va. 321, 325 S.E.2d 111 (1984) (finding right of action for retaliatory discharge based, in part, on West Virginia Code § 21-5-5b, which restricts an employer's use of polygraph testing); *Shanholtz v. Monongahela Power Co.*, 165 W.Va. 305, 270 S.E.2d 178 (1980) (finding right of action for retaliatory discharge based on a right to file a claim under the West Virginia Workers' Compensation Act, West Virginia Code § 23-5-1); *Travis v. Alcon Laboratories, Inc*.,  202 W.Va. 369, 504 S.E.2d 419 (finding no general public policy against all forms of harassment in the workplace under West Virginia Human Rights Act for purposes of wrongful discharge law).

[45] 188 W. Va. at 377, 424 S.E.2d at 612 (emphasis added).

16

Recently, in *Frohnapfel v. ArcelorMittal USA LLC*,[46] this Court considered a certified question from the Northern District of West Virginia and held that an employee who alleges that he was discharged for reporting violations of a permit issued under authority of the West Virginia Water Pollution Control Act[47] and for making complaints to his employer about those permit violations has established the predicate substantial public policy required for a *Harless* claim.[48]  In analyzing the legal issue before us in that case, we reiterated that "[m]ost of our retaliatory discharge cases involve violations of statutes that we deem to articulate a substantial public policy."[49]  While we recognized that a substantial public policy interest in discouraging illegal behavior generally exists,[50] we also cautioned:

> As this Court made clear in *Swears v. R.M. Roach & Sons, Inc.*, 225 W.Va. 699, 696 S.E.2d 1 (2010), *a Harless-based action requires more than simply raising the spectrum of a potentially governing law.* "The mere citation of a statutory provision is not sufficient to state a cause of action for retaliatory discharge without a showing that the discharge violated the public policy that *the cited provision clearly mandates*."[51]

---

[46] 235 W.Va. 165, 772 S.E.2d 350 (2015).

[47] *See* West Virginia Code §§ 22-11-1 to -30 (2014).

[48] *Frohnapfel,* 235 W. Va. at 173, 772 S.E.2d at 358.

[49] *Id.* at 170, 772 S.E.2d at 355 (citing *Birthisel*, 188 W.Va. at 376, 424 S.E.2d at 611 (internal citations omitted)).

[50] *Id.* at 173, 772 S.E.2d at 358 (citing *Harless*, 162 W. Va. at 116, 246 S.E.2d at 271, and *Kanagy*, 208 W. Va. at 533, 541 S.E.2d at 623 ("there is a substantial public policy interest in discouraging illegal behavior.")).

[51] *Id.* at 170–71, 772 S.E.2d at 355–56 (citing *Swears* at 705, 696 S.E.2d at 7).

Finding a marked contrast to *Swears*, we noted that the "crux of the petitioners' claims [was] rooted in allegations of both public policy violations and potential harm to a water source for some of this state's citizenry."[52] Looking specifically at the policy directives contained within our statutes,[53] we stated that "with sufficient clarity, the Legislature pronounced a specific statement of public policy, the objective of which is to maintain reasonable standards of water purity and quality for the public's health and enjoyment."[54] We also observed that:

> If employers were truly without advance notice of what actions constitute violations of the Act and/or permits issued in conjunction with the Act, that would undeniably create

---

[52] *Id.*

[53] One of the statutes that both this Court and the District Court analyzed, West Virginia Code § 22-11-2, contained the following declaration included in the Act:

> (a) It is declared to be the public policy of the State of West Virginia to maintain reasonable standards of purity and quality of the water of the State consistent with (1) public health and public enjoyment thereof; (2) the propagation and protection of animal, bird, fish, aquatic and plant life; and (3) the expansion of employment opportunities, maintenance and expansion of agriculture and the provision of a permanent foundation for healthy industrial development.

> (b) It is also the public policy of the State of West Virginia that the water resources of this State with respect to the quantity thereof be available for reasonable use by all of the citizens of this State.

W. Va. Code § 22-11-2 (Repl. Vol. 2014).

[54] *Frohnapfel* at 173, 772 S.E.2d at 358 (citation omitted).

18

grounds for challenging enforcement of its provisions. But the case before us does not involve an employer being forced to operate oblivious to the compliance requirements of its permit. As the district court recognized, permits issued under the Act's authority contain the necessary specificity regarding the permissible levels of various chemical waste effluents.[55]

As the District Court's order in this case acknowledges, the whistleblower protections allegedly afforded to Ms. Blanda under the Dodd-Frank Act, 15 U.S.C. § 78u-6, are unavailable. So, as an alternate means of recourse, Ms. Blanda essentially seeks to avail herself of the same whistleblower protections statutorily afforded to public employees who report wrongdoing to the appropriate authority under West Virginia Whistle-Blower Law.[56] In light of the statute's clear language limiting whistleblower protections to the

---

[55] *Id*. at 172, 772 S.E.2d at 357.

[56] *See* West Virginia Code §§ 6C-1-1 through -8 (Repl. Vol. 2019). Chapter 6C of the West Virginia Code pertains specifically to "public employees," and under West Virginia Code § 6C-1-2(c) (Repl. Vol. 2019), the term "employer" means "a person supervising one or more employees, including the employee in question, a superior of that supervisor, or an agent of a public body." West Virginia Code § 6C-1-3 (Repl. Vol. 2019) provides:

> (a) No employer may discharge, threaten or otherwise discriminate or retaliate against an employee by changing the employee's compensation, terms, conditions, location or privileges of employment because the employee, acting on his own volition, or a person acting on behalf of or under the direction of the employee, makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

> (b) No employer may discharge, threaten or otherwise discriminate or retaliate against an employee by changing the employee's compensation, terms, conditions, location or privileges of employment because the employee is requested

19

public sector, and the other specific statutory expressions of public policy extending

whistleblower protections to non-public employees outlined in footnote 56, we will not

---

> or subpoenaed by an appropriate authority to participate in an investigation, hearing or inquiry held by an appropriate authority or in a court action.

As we acknowledged in *Swears*, there are other state and federal statutes that expressly contain whistleblower laws, such that retaliatory termination is prohibited by a private employer against a private employee:

> These include the retaliatory discharge provisions of the Worker's Compensation Act, [W. Va. Code §§ 23-5A-1 to -3,] Mine Safety Act, [W. Va. Code § 22A-1-22,] Mine Safety and Health Act, [30 U.S.C. § 801, *et seq*.,] Equal Pay for Equal Work Act, [W. Va. Code § 21-5B-3 (2002),] Occupational Safety and Health Act, [29 U.S.C. § 660(c)(1) (2000); W. Va. Code § 21-3A-13(a) (2002),] Labor Management Relations Act, [29 U.S.C. § 141 (2000),] Employee Retirement Income Security Act, [29 U.S.C. §§ 1140–1141,] Energy Reorganization Act, [42 U.S.C. § 5851 (2000),] Clean Air Act, [42 U.S.C. § 7622,] Bankruptcy Act, [11 U.S.C. § 525(b) (2000),] Consumer Credit Protection Act, [15 U.S.C. § 1674 (2000); W. Va. Code § 46A-2-131 (1999),] Judiciary and Judicial Procedure Act, [28 U.S.C. § 1875 (2000); W. Va. Code § 61-5-25(a) (2000),] Toxic Substances Control Act, [15 U.S.C. § 2622 (2000),] Comprehensive Environmental Response, Compensation, and Liability Act, [42 U.S.C. § 9610 (2000),] Safe Drinking Water Act, [42 U.S.C. § 300j-9(i),] Water Pollution Control Act, [33 U.S.C. § 1367 (2000),] Solid Waste Disposal Act, [42 U.S.C. § 6971 (2000),] Energy Reorganization Act, [42 U.S.C. § 5851 (2000),] and the Surface Mining Control and Reclamation Act. [30 U.S.C. § 1293 (2000).]

*Swears*, 225 W. Va. at 705 n.7, 696 S.E.2d at 7 n.7 (citing Parween S. Mascari, *What Constitutes a "Substantial Public Policy" in West Virginia for Purposes of Retaliatory Discharge: Making a Mountain Out of a Molehill?*, 105 W. Va. L. Rev. 827, 835–36 (2003) (original footnote numbers omitted) (original footnote information placed in brackets)).

extend these same protections to a non-public employee under West Virginia Code § 61-3-24. If whistleblower protections are to be extended outside the contexts outlined above, that expression of public policy should be made by the legislature—not the Court.

Again, as we advised in *Tiernan*,[57] courts are to "proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject." In addition, "despite the broad power vested in the courts to determine public policy," courts are to "exercise restraint"[58] when using such power. "We have exercised the power to declare an employer's conduct as contrary to public policy with restraint . . . and have deferred to the West Virginia legislature because it 'has the primary responsibility for translating public policy into law.'"[59] "The power to declare an employer's conduct as contrary to public policy is to be exercised with restraint, and with due deference to the West Virginia legislature as the primary organ of public policy in the state."[60]

---

[57] 203 W.Va. at 141, 506 S.E.2d at 584 (internal citations omitted).

[58] *Id.*

[59] *Shell*, 183 W.Va. at 413, 396 S.E.2d at 180 ((citations omitted)).

[60] *See Washington v. Union Carbide Corp.*, 870 F.2d 957, 962–63 (4th Cir. 1989) (finding no retaliatory discharge by private employee under West Virginia's Occupation Safety and Health Act, which applied only to public employees, because no statutory recognition of an action for retaliatory discharge for reporting safety violations had been generally conferred in West Virginia); *See also Brown v. Hammond*, 810 F.Supp. 644 (W.D. Pa. 1993) (finding plaintiff's termination for gratuitously alerting others about defendants' improper billing practice did not violate type of significant, clearly mandated public policy required to satisfy the very narrow exception to Pennsylvania's at-will employment doctrine.). *But cf. Williamson v. Greene*, 200 W.Va. 421, 490 S.E.2d 23 (1997) (even though discharged at-will employee of employer with less than requisite

21

To recognize West Virginia Code § 61-3-24 as a source of substantial public policy in these whistleblower actions, when our Legislature has expressly limited these claims to very specific employees, would, as Respondents contend, make employers deputized enforcers of our criminal statutes in order to avoid *Harless*-type liability and "throw open the floodgates of litigation by allowing an employee to confer protected status on himself or herself by merely making an allegation of illegal conduct by a co-worker to a supervisor, no matter how serious, spurious, or unsupported it may be."

The substantial public policy exception holds potential for abuse by disgruntled employees,[61] and "the potential for a legitimately terminated employee to come up with some reason for her termination based on the substantial policy exception has long been recognized. This kind of deception is to be expected with an exception that is so broadly defined."[62] Balancing the countervailing policy interests at issue here, we decline

---

twelve employees has no statutory claim for retaliatory discharge under West Virginia Human Rights Act, discharged employee might nevertheless maintain a common law claim for retaliatory discharge against the employer.); *Kanagy*, 208 W.Va. 526, 541 S.E.2d 616 (finding substantial public policy in regulations governing Board of Barbers and Cosmetologists that require all licensees to report violations of regulations to the Board); *Tudor v. Charleston Area Medical Center, Inc.*, 203 W.Va. 111, 506 S.E.2d 554 (1997) (finding substantial public policy existed in regulations covering licensure of hospitals).

[61] Mascari, *What Constitutes a "Substantial Public Policy," supra* n. 56 at 867.

[62] *Id.* (citing *Stanley v. Sewell Coal Co.*, 169 W. Va. 72, 78, 285 S.E.2d 679, 684 (W. Va. 1981) (J., Neely, dissenting) ("[t]he plaintiff here has used *Harless* as the basis for

22

to further expand our common law substantial public policy exception in this instance. Therefore, we hold that West Virginia Code § 61-3-24 does not constitute a substantial public policy under *Harless v. First National Bank*, 162 W. Va. 116, 246 S.E.2d 270 (1978), and its progeny, to protect an employee of a non-public employer who reported suspected criminal conduct to the appropriate authority and claims to have been retaliated against as a result.

## IV. CONCLUSION

For these reasons, we answer the reformulated certified question in the negative.

Certified question answered.

---

a cause of action which on its face seems groundless . . . I submit that this is a nuisance lawsuit made possible only by the improvident holding in *Harless*.").