No. 20-0040 – *Todd Jarrell v. Frontier West Virginia, Inc.; Daniel Jordan; and Michael Linkous*

Justice Hutchison, dissenting, joined by Justice Wooton:

I dissent from the majority opinion's stunning conclusion that West Virginia Code § 61-3-49b does not embody a public policy sufficient to support a *Harless*-type wrongful-discharge claim.[1] The statute criminalizes disrupting communication services by "intentionally damaging communications . . . equipment" in a way that either (1) disrupts service "to ten or more households or subscribers," or (2) results in the loss of $1,000 or more in property. W. Va. Code § 61-3-49b(a)(1) and (2) (2012). Plaintiff Todd Jarrell's allegations bear all the hallmarks of an internal whistleblower claim and should have been allowed to proceed to the discovery phase for development.

The plaintiff was a "cable splicing technician" working for defendant Frontier West Virginia, maintaining communication lines and equipment. The plaintiff's complaint alleges he discovered three coworkers were removing equipment, cutting communication lines, and otherwise "were sabotaging cable equipment to cause service outages." These artificial outages, often in rural areas of West Virginia where there is no cellphone service, would sometimes last up to two weeks. The coworkers "would then

---

[1] *See Harless v. First Nat. Bank in Fairmont*, 162 W. Va. 116, 246 S.E.2d 270 (1978).

take the service calls to repair the sabotaged equipment, thereby receiving additional pay beyond their normal hours."

The plaintiff did not allege his coworkers violated a nebulous statute, say, one involving generic destruction of property.[2]  No, he alleged his coworkers violated a statute focused on "communication services" and defendant Frontier is in the business of providing communication services.[3]  In this context, the statute is not vague: the plaintiff alleged his coworkers intentionally damaged communication equipment, and that the coworkers disrupted service to ten or more households and/or damaged in excess of $1,000 in property.  He alleged the violation of a specific statute, and that the actions of these coworkers engendered consequences obviously embodied in the enactment.  The plaintiff says hills and hollows were deprived of services for weeks, and that he learned one person died of a heart attack because neighbors had no way to communicate with 911.

Both the trial court and this Court would, without a pause, impose thousands of dollars in fines, thousands of hours of community service, and/or up to five years in prison on the plaintiff's coworkers for their actions.  Yet, despite the obvious conclusion that the Frontier workers violated the statute in the course of their employment, somehow,

---

[2] *See* W. Va. Code § 61-3-30 (criminalizing the taking, carrying away, destruction, injury or defacing of any real or personal property or monument).

[3] "Frontier is a leading communications and technology provider offering gigabit speeds that empower and connect 2.8 million broadband subscribers in 25 states as of December 31, 2022." *Frontier Communications Parent, Inc.*, Form 10-K (Feb. 24, 2023).

the majority opinion concludes that "the statute is not sufficiently clear to place an employer on notice that § 61-3-49b embodies a substantial public policy[.]"[4] The majority opinion just cannot say the statute is "sufficiently clear" because the Legislature did not tack on a paragraph declaring "a definitive recognition of a substantial public policy by the Legislature[.]"[5]

In other words, the majority opinion says the statute is clear enough that individuals may be put in jail or under other criminal jeopardy for violating the statute. On the other hand, defendant Frontier, a company with $20.5 billion in assets[6] and who knows how many lawyers in its employ, has no way to discern if the statute states some sort of worthwhile public policy, and it's all the Legislature's fault for not properly explicating the words it put into law. Or maybe the Legislature must say "this law is public policy" or – even better – "this law is a *substantial* public policy" before someone can be protected from retaliation by their employer when they make a good faith effort to uphold the statute. Frankly, I cannot understand how the majority opinion can find that a statute that plainly says it is a crime to intentionally interrupt communication service to ten or more households, when that criminal act is alleged to have resulted in at least one death, is nothing more than a "crime against property" that has no bearing on "public health, safety,

---

[4] ___ W. Va. at ___, ___ S.E.2d at ___ (Slip. Op. at 16).

[5] ___ W. Va. at ___, ___ S.E.2d at ___ (Slip. Op. at 17).

[6] *Frontier Communications Parent, Inc.*, Form 10-Q at 1 (Sept. 30, 2023).

3

morals or welfare[.]" *Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W. Va. 135, 141, 506 S.E.2d 578, 584 (1998). The majority opinion defies the Legislature's statements and the allegations in the plaintiff's complaint.

Furthermore, most courts in America have recognized some sort of action, based either in common-law or in statute, when an employee is terminated in retaliation for what is called "whistleblowing." *See generally* Stephen P. Pepe, Scott H. Dunham, *Avoiding and Defending Wrongful Discharge Claims*, § 1:7, "Public policy exception to at-will rule—Discharge for 'whistleblowing'" (2023); 2 Mark A. Rothstein, et al., *Employment Law*, § 9:12, "Public policy exception—Report of illegal activity" (6th ed. 2023). As one treatise notes, "In many jurisdictions, an employee's internal opposition to the employer's or a co-worker's violation of law is protected by public policy." Richard E. Kaye, 24 Causes of Action 2d 227, § 30 (2004). "Opposition to illegal conduct usually takes the form of a complaint to a superior, and evidence that the plaintiff made such a complaint should be sufficient to establish that the plaintiff was protected by public policy." *Id.*

Courts nationwide also recognize that an employee is protected from both "internal" and "external" whistleblowing. An external whistleblower is one who makes an accusation to an authority outside the company, such as law enforcement or a regulatory agency. An internal whistleblower is an employee who reports the alleged wrongdoing within the bounds of his or her employer, usually to a supervisor. One court explained why

4

internal whistleblowing should be protected from retaliatory discharge, and why employees should encouraged to report wrongdoing to their employer:

> First, one of the primary goals of protecting whistle-blowers from retaliatory discharge is to reduce wrongdoing in a speedy, efficacious manner. In that respect, it makes sense to recognize claims of whistle-blowers who report wrongdoing within the employing organization to a person in a position to investigate and remedy the wrongdoing. Second, internal disclosures are much less disruptive to the company than external disclosures. "[L]oyal employees, who do not go outside their organizations, should not have less protection than employees who could be considered more disruptive by complaining outside their organizations." Daniel P. Westman, Whistleblowing: The Law of Retaliatory Discharge, at 114 (1991). Oklahoma law protects both internal and external reporting of whistle-blowers who establish a sufficient public policy violation from retaliatory discharge.

*Barker v. State Ins. Fund*, 40 P.3d 463, 468 (Okla. 2001).

Plaintiff Jarrell insists he reported the criminal activity of his coworkers to his supervisor in mid-2016. Jarrell's supervisor responded that the coworkers were "untouchable" because they "had friends in high places" and that there was nothing the supervisor could do. In late 2017, when the plaintiff reiterated his complaint to the supervisor that his three coworkers were sabotaging communications equipment, the plaintiff was reassigned to another county. The plaintiff then went over his direct supervisor's head, reporting the misconduct to a manager in the security division. That latter report resulted in the plaintiff being allowed to meet with several upper-level supervisors. The plaintiff's actions, as a loyal employee who did not go outside of his organization, warrants protection from retaliatory conduct under our law.

5

West Virginia has a whistleblower statute for public employees, West Virginia Code § 6C-1-3(a), which provides that "[n]o employer may discharge, threaten, or otherwise discriminate or retaliate against an employee . . . because the employee . . . makes a good faith report . . . verbally . . . to the employer . . . an instance of wrongdoing[.]"[7] "Wrongdoing" is defined by the statute as "a violation which is not of a merely technical or minimal nature of a . . . state statute . . . designed to protect the interest of the public or the employer." We have said that this statute is designed to protect public employees and, as such, does not apply to a private employer. *Swears v. R.M. Roach & Sons, Inc.*, 225 W. Va. 699, 704 n.7, 696 S.E.2d 1, 6 n.7 (2010). Moreover, in *Blanda v. Martin & Seibert, L.C.*, 242 W. Va. 552, 561, 836 S.E.2d 519, 528 (2019), this Court decided that whistleblower protections, like that outlined in the whistleblower statute, should not be extended to private employees. Despite this Court being the caretaker of the common law, the opinion abdicated that role to the Legislature, declaring that "[i]f whistleblower protections are to be extended [to non-public employees], that expression of public policy should be made by the legislature—not the Court." *Id.* at 562, 836 S.E.2d at 529.

---

[7] West Virginia Code § 6C-1-3(a) provides, in full:

> No employer may discharge, threaten, or otherwise discriminate or retaliate against an employee by changing the employee's compensation, terms, conditions, location, or privileges of employment because the employee, acting on his or her own volition, or a person acting on behalf of or under the direction of the employee, makes a good faith report, or is about to report, verbally or in writing, to the employer or appropriate authority, an instance of wrongdoing or waste.

I believe that *Blanda* is inherently faulty, and this case proves why it should be overruled. Within months of plaintiff's Jarrell's meeting with upper management, for the first time in his twenty-year career, plaintiff claims he was wrongfully suspended for five days and told this was his "last chance" for calling in to work a few hours late. Two weeks after that, he was subjected to a "random" drug test because of suspicion "he was on something" 129 days earlier. The plaintiff's union representative filed a grievance with Frontier, demanding the company "immediately cease harassing, humiliating and trying to intimidate employees for speaking out on working conditions." And then came plaintiff's firing for taking a bucket truck home for two-and-a-half hours. The plaintiff's complaint lists numerous instances where bucket trucks had been used for personal reasons: one supervisor had plaintiff put up a sign saying, "Will you marry me?"; another supervisor had Frontier employees clean out the gutters of his church; and a company vice-president had a worker do the same thing plaintiff was fired for, use a bucket truck to clean out bats from the top of his cabin.

This case was decided entirely at the Rule 12(b)(6), motion-to-dismiss-the-complaint stage. The plaintiff was deprived of discovery, and the majority opinion effectively tries plaintiff's case on the merits of the allegations in his complaint. This Court has said, to sustain a *Harless* action, "an employee must identify a substantial public policy which is *specifically* implicated by the conduct which gave rise to the discharge and that his or her discharge was motivated by a desire to thwart such policy." *Taylor v. W. Va. Dep't of Health & Hum. Res.*, 237 W. Va. 549, 566, 788 S.E.2d 295, 312 (2016). Plaintiff

7

Jarrell identified a substantial policy created by West Virginia Code § 61-3-49b: that individuals cannot destroy cables and equipment and deprive citizens of life-saving communication. The plaintiff became a whistleblower and told his supervisors of the illegal acts, and he sufficiently articulated that Frontier's management retaliated against him in response.

In sum, I would have held that the plaintiff stated a cognizable claim for wrongful discharge in violation of the public policy contained in West Virginia Code § 61-3-49b. Moreover, I would have revised or overruled *Blanda*, and found that an employer may not discharge, threaten, or otherwise discriminate or retaliate against an employee because the employee made a good faith report to the employer of an instance of wrongdoing (like the clear violation of a criminal statute designed to protect the public or the employer).

Accordingly, I respectfully dissent to the majority's opinion. I am authorized to state that Justice Wooton joins in this dissent.